|    | UNITED STATES DISTRICT COURT |
|----|------------------------------|
| 1  | UNITED STATES DISTRICT COURT |
|    | SOUTHERN DISTRICT OF INDIANA |
| 2  | INDIANAPOLIS DIVISION |

```
1                 UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF INDIANA
2                    INDIANAPOLIS DIVISION

3

    UNITED STATES OF AMERICA,   )
4                               )
                                ) CAUSE NO.
5            Plaintiff,         ) 1:16-cr-00257-JRS-TAB
                                )
6            -vs-               )
                                ) Indianapolis, Indiana
7    JOSHUA SHANE DUFFY,        ) February 5, 2019
                                ) 10:00 a.m.
8            Defendant.         )

9


10                         BEFORE THE
                   HONORABLE JAMES R. SWEENEY

11

12            OFFICIAL REPORTER'S TRANSCRIPT OF

13                  GUILTY PLEA HEARING

14


15   FOR THE PLAINTIFF:         Mr. Jeffrey Preston
                                Assistant United States Attorney
16                              10 West Market Street
                                Suite 2100
17                              Indianapolis, IN  46204

18   FOR THE DEFENDANT:         Mr. Kenneth L. Riggins
                                ATTORNEY AT LAW
19                              1512 Delaware Street
                                Indianapolis, IN  46202

20

21

22   Court Reporter:   Cathy Easley Jones, RDR, FCRR
                       Official Court Reporter
23                     46 East Ohio Street, Room 290
                       Indianapolis, IN  46204

24

25         PROCEEDINGS TAKEN BY MACHINE SHORTHAND
               COMPUTER-AIDED TRANSCRIPTION
```

1      *(In open court)*

2              THE COURT:  We're on the record in Cause

3      1:16-cr-257, United States of America versus Joshua Shane

4      Duffy, and I see Ms. Preston here for the United States.  Good

5      morning.

6              MS. PRESTON:  Good morning, Your Honor.

7              THE COURT:  Hope you're feeling better than the last

8      time you were in here.

9              MS. PRESTON:  Thank you, Your Honor.  I appreciate

10     that.

11             THE COURT:  Mr. Riggins on behalf of the defendant.

12             MR. RIGGINS:  Good morning, Your Honor.

13             THE COURT:  Is that Mr. Duffy?

14             MR. RIGGINS:  It is.

15             THE COURT:  This is an accept/reject hearing; is

16     that right?

17             MS. PRESTON:  Yes, Your Honor, I believe so.  With

18     news this morning, it's potentially a change of plea hearing.

19     So we'll have to confirm that with Mr. Duffy at this time, but

20     my last conversation with Mr. Riggins indicated he does intend

21     to change his plea today pursuant to the plea agreement that

22     was previously filed.

23             THE COURT:  Okay.  So do we need to go through the

24     charges and the potential penalties and those kinds of things,

25     Mr. Riggins, or do you --

1    MR. RIGGINS:  I don't think it would hurt, Your

2 Honor.  I think we probably should go through the charges just

3 to make sure Mr. Duffy is clear.

4    MS. PRESTON:  I agree, Your Honor, for the record we

5 should.  I brought with me the penalty sheet for Your Honor

6 for the indictment, if I may approach your clerk.

7    THE COURT:  You may.  Please do.  He's approachable,

8 really.  Thank you.  Please proceed.

9    MS. PRESTON:  Thank you, Your Honor.  As set forth

10 in the indictment filed on November 29th, 2016, the defendant

11 is charged with several counts in this case, Your Honor; and

12 Your Honor has those charges before him.

13    Count 1, as set forth in the indictment, charges

14 Mr. Duffy under 18 U.S.C., Section 2251(a) with sexual

15 exploitation of a child.  Count 2 charges Mr. Duffy under 18

16 U.S.C. 2422(b) with coercion and enticement of Minor Victim 1.

17 Count 3 charges Mr. Duffy --

18    THE COURT:  Can I just interrupt you for a second?

19 Are any victims here today?

20    MS. PRESTON:  Your Honor, yes.  The parents of the

21 victims are in court today and are sitting in front of you,

22 Your Honor.

23    THE COURT:  Welcome.  Thank you.

24    All right.  Please proceed.

25    MS. PRESTON:  Thank you, Your Honor.

1    Count 3 charges the defendant, Mr. Duffy, under 18

2    U.S.C. 2251(a) with sexual exploitation of a child, that being

3    Minor Victim 2.

4    Count 4 charges coercion and enticement under

5    2422(b) again, of Minor Victim 2.

6    Finally, Count 5 charges the defendant under 18

7    United States Code, Section 2252(a)(4)(B) with attempted

8    possession of child pornography, that child pornography being

9    the pornography created by the defendant of Minor Victim 1.

10   Those are the charges set forth against this defendant, Your

11   Honor; and I believe the penalties for each of those charges

12   are before Your Honor at this time.

13   THE COURT:  Why don't you go over those for the

14   benefit of the defendant.

15   MS. PRESTON:  Yes, Your Honor.

16   Count 1, sexual exploitation of a child, has a

17   penalty or punishment of no less than 15 years and a maximum

18   of 30 years' imprisonment, a $250,000 fine, and a term of

19   supervised release of not less than five years to life.

20   Count 2, coercion and enticement --

21   THE COURT:  Let me stop you a second.  So the

22   supervised release is not less than five years.  Here on that

23   sheet it just says lifetime.  That's five to life.  Is that

24   for the supervised release?

25   MS. PRESTON:  I believe it carries with it a

lifetime.

      MR. RIGGINS:  I have lifetime listed on my sheet.

      MS. PRESTON:  I'm sorry, Your Honor.  The PSR indicates five years, but I have a lifetime of supervised release from memory in my statutes as well.  That's certainly what we'll be asking for, so I'll put that on the record now.

      THE COURT:  Okay, great.  Thank you.

      MS. PRESTON:  Count 2, coercion and enticement of Minor Victim 1, that carries with it a mandatory minimum sentence of imprisonment of ten years to life, a $250,000 fine; and again, given it's a Class A felony, a term of supervised release of lifetime imprisonment.

      Count 3, sexual exploitation of a child, again, carries with it a mandatory minimum sentence of 15 years' imprisonment to 30 years' imprisonment, a $250,000 fine, and a lifetime period of supervised release.

      Count 4, coercion and enticement -- sorry, Count -- yes, Count 4, coercion and enticement of Minor Victim 2, carries with it a mandatory minimum sentence of 10 years to life imprisonment, $250,000 fine, and a term of supervised release of a lifetime.

      Finally -- and I should note for the record, by the way, Your Honor, that Counts 2 and 4 have a lifetime maximum sentence.  Counts 1 and 3 have a 30-year maximum, but those maximum periods of imprisonment stack.  So there would be a

1   term of imprisonment for both of those of 60 years.

2               THE COURT:  So they can be consecutive?

3               MS. PRESTON:  Correct.

4               Finally, Your Honor, Count 5, which is attempted

5   possession of child pornography, carries with it a period of

6   imprisonment, I believe, of -- from memory, of zero to 10

7   years, a $250,000 fine, and a term of supervised release of

8   five years to life.

9               THE COURT:  Okay.  That can be consecutive as well?

10              MS. PRESTON:  Correct.

11              THE COURT:  On the statutory side, you've got --

12   some of these have minimum 15 years up to 30, some up to life.

13              MS. PRESTON:  Correct.

14              THE COURT:  The minimum 15 could be consecutive for

15   60; and if you add in Count 5, that could be 70 years --

16              MS. PRESTON:  Correct, Your Honor.  That's right.

17              THE COURT:  -- consecutive.  How about guideline

18   ranges?

19              MS. PRESTON:  Life, Your Honor, without acceptance.

20              THE COURT:  What's the low end, 360 months to life?

21              MS. PRESTON:  As set forth, and we agree with the

22   calculation in the PSR, Your Honor.  It looks as though the

23   total offense level with acceptance of responsibility is 42

24   years' imprisonment, and I believe his criminal history

25   category is 6; is that correct, for 14 points?  And that does

1 | yield -- I'm sorry, Your Honor.  I'm turning to the correct
2 | page in the report just to make sure I get it just right.
3 | Here we go.  I'm sorry, Your Honor.
4 |       Based on a total offense level of 42 and a criminal
5 | history category of 6, the guideline imprisonment range is --
6 | you're correct, Your Honor, 360 to life.
7 |       THE COURT:  But that would be with acceptance of
8 | responsibility and so on and so forth.  If it went to trial --
9 |       MS. PRESTON:  We're looking now at an offense level
10 | of 45.
11 |       THE COURT:  So 45 with criminal history of 6.  So
12 | you're off the charts.  You've got life --
13 |       MS. PRESTON:  Yes, Your Honor.
14 |       THE COURT:  -- minimum of life if you go to trial.
15 |       MS. PRESTON:  That is correct.  And for the record,
16 | that is exactly what we will seek if we go to trial and he is
17 | convicted on these counts.
18 |       THE COURT:  Okay.  How about any agreement offered,
19 | any -- what was the offer?
20 |       MS. PRESTON:  Yes, Your Honor.  As set forth in the
21 | plea agreement that was filed and signed by the parties -- and
22 | the date of signature was November 6th of 2018.  The United
23 | States has offered, in writing, its best and final offer to
24 | the defendant in this case.  And that requires the defendant
25 | to plead guilty to Count 1 and Count 4, and that means that --

1  and also as set forth in the final and best offer for the

2  defendant in this case, the United States has agreed that

3  should the defendant accept responsibility for those crimes

4  and forego trial in this case, that the Court -- the United

5  States and the parties have agreed that the following sentence

6  is the appropriate disposition of this cause.  And that would

7  be a term of imprisonment for a period of between 20 and 25

8  years.

9         THE COURT:  Which you would argue for -- the parties

10  would argue between 20 and 25?

11         MS. PRESTON:  Exactly, Your Honor.  Each party is

12  free to recommend a specific sentence within that 20- to

13  25-year range.

14         The parties understand that a period of supervised

15  release must be ordered for at least 60 months, and that would

16  be on the possession count up to life.  And for the record,

17  the United States will be seeking a supervised release period

18  of life in this case, given the charges, Your Honor.  I just

19  want to make that clear as well.

20         That is the final and best offer from the United

21  States.  I want to make clear for the record in front of the

22  defendant and his counsel, there will be no other plea offers

23  in this matter, Your Honor.

24         THE COURT:  Let me make sure I understand, then, and

25  for the benefit of the victims' families as well.  So

1  statutorily, we're looking at Counts 1 and 3, minimum of 15

2  years; Counts 2 and 4, minimum of 10 years, maximum of life.

3  We're looking -- if there were a trial and you're found guilty

4  on any of these charges, it would be lifetime.

5       The deal -- the guidelines would be 360 months.  The

6  deal is between 240 and 288.

7       MS. PRESTON:  Yes, Your Honor.

8       THE COURT:  Is that a fair assessment, Mr. Riggins?

9       MR. RIGGINS:  I think if he goes to trial and loses,

10  it's just life.

11       MS. PRESTON:  He's talking about with the deal.

12       THE COURT:  You're right.

13       MR. RIGGINS:  With the deal.

14       THE COURT:  If you go to trial, it would be life --

15       MR. RIGGINS:  Yes.

16       THE COURT:  -- and found guilty, it would be life.

17  So you're looking at life at trial.  You're looking right now

18  at 240 to 288 is what the parties would argue for under the

19  agreement; is that --

20       MR. RIGGINS:  That is accurate.

21       MS. PRESTON:  Yes, Your Honor.

22       THE COURT:  All right.  Anything else, Ms. Preston?

23       MS. PRESTON:  No, Your Honor.

24       THE COURT:  Okay.  Mr. Duffy, Mr. Riggins, why don't

25  you come up here to the podium, if you would, the lectern.

1          Mr. Rogers is going to administer you an oath,
2    Mr. Duffy.
3       *(The defendant was sworn.)*
4          THE COURT:  All right.  Mr. Duffy, do you understand
5    what we just went over?
6          THE DEFENDANT:  Yes.
7          THE COURT:  Do you understand you have a right to
8    trial?
9          THE DEFENDANT:  Yes, sir.
10         THE COURT:  Do you understand what the statutory
11   penalty ranges are that we just discussed?
12         THE DEFENDANT:  Yes, sir.
13         THE COURT:  Do you understand the possible guideline
14   ranges?
15         THE DEFENDANT:  Yes, sir.
16         THE COURT:  360 months, I think, to life?  And you
17   understand the terms of the plea agreement?
18         THE DEFENDANT:  Yes.
19         THE COURT:  That 240 to 288 months and lifetime
20   supervised release; is that right?
21         MR. RIGGINS:  I think it's set for lifetime
22   supervised release.
23         THE COURT:  Right.  You understand all that?
24         THE DEFENDANT:  Yes.
25         THE COURT:  Have you had a chance to discuss those

1 matters, those terms, those specifics with Mr. Riggins?

2         THE DEFENDANT:  Yes.

3         THE COURT:  Do you have an idea -- do you want to

4 proceed to trial, or would you like to -- what would you like

5 to do?

6         THE DEFENDANT:  I'm going to accept the plea.

7         THE COURT:  You'd like to accept the plea.  So can

8 we proceed with taking the plea now, Mr. Riggins?

9         MR. RIGGINS:  Yes, Your Honor.

10         THE COURT:  Ms. Preston, you're ready for that?

11         MS. PRESTON:  Yes, Your Honor.

12         THE COURT:  Okay.  All right.

13         Mr. Duffy, you understand you're now under oath; and

14 if you make any false statements, those statements could be

15 used against you for a subsequent prosecution for making a

16 false statement or for perjury?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Please state your full fame for the

19 record.

20         THE DEFENDANT:  Joshua Shane Duffy.

21         THE COURT:  Where were you born, Mr. Duffy?

22         THE DEFENDANT:  Jacksonville, Florida.

23         THE COURT:  How old are you?

24         THE DEFENDANT:  Thirty-two.

25         THE COURT:  How far did you go in school?

1        THE DEFENDANT:  College.

2        THE COURT:  So you've got a high school degree, and

3   you've got some amount of college or all the way through

4   college or what?

5        THE DEFENDANT:  I have a bachelor's in psychology.

6        THE COURT:  You've got a bachelor's of psychology?

7   That's what, a BS?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Where was that from?

10       THE DEFENDANT:  University of Phoenix.

11       THE COURT:  You can understand and write English

12  well enough to understand the plea agreement?

13       THE DEFENDANT:  Yes.

14       THE COURT:  And the charges in the indictment?

15       THE DEFENDANT:  Yes.

16       THE COURT:  Have you been treated for any mental

17  illness or addiction to narcotic drugs of any kind?

18       THE DEFENDANT:  No.

19       THE COURT:  Are you under the influence of any drug,

20  medication, or controlled substance of any kind that would

21  interfere with your ability to understand what's going on here

22  today?

23       THE DEFENDANT:  No.

24       THE COURT:  Now, if at any time you don't understand

25  what's going on, feel free to ask the Court or Mr. Riggins in

1  private.  Do you understand?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay.  Have you received a copy of the

4  indictment, which are the written charges against you?

5          THE DEFENDANT:  Yes.

6          THE COURT:  We kind of discussed it a little bit

7  here, but have you fully discussed those with Mr. Riggins?

8          THE DEFENDANT:  Yes, sir, I have.

9          THE COURT:  Are you fully satisfied with the counsel

10 that you've received from Mr. Riggins?

11         THE DEFENDANT:  Yes, I am.

12         THE COURT:  And the advice that he's given you?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And we just discussed the formal plea

15 offers were conveyed to the defendant, and that we just heard

16 the best and final offer from the government.  Is that a

17 correct statement?

18         MS. PRESTON:  Yes, Your Honor.

19         THE COURT:  Mr. Riggins?

20         MR. RIGGINS:  Yes, Your Honor.

21         THE COURT:  Mr. Duffy, did you have an opportunity

22 to read and discuss the plea agreement with Mr. Riggins?

23         THE DEFENDANT:  Yes, I have.

24         THE COURT:  And do you have a copy of that there in

25 front of you?

1    THE DEFENDANT:  Yes, I do.

2    THE COURT:  If you could turn to the last page of

3  that.  Is that your signature there?

4    MR. RIGGINS:  Your Honor, we don't have a signed

5  copy in front of us.

6    THE COURT:  You don't have --

7    MR. RIGGINS:  It's the exact same copy as the one

8  there if you'd like for me to show him.

9    MS. PRESTON:  Your Honor, I have a copy I can show

10  the defendant.

11    THE COURT:  That would be great.  Thank you.

12    MR. RIGGINS:  Your Honor, I'm tendering a copy to

13  Mr. Duffy; and he indicated that that is his signature

14  provided by the U.S. attorney's office.

15    THE COURT:  Is that ECF 67?

16    MR. RIGGINS:  It is, Your Honor.

17    THE COURT:  Did you have an opportunity to discuss

18  and read that with Mr. Riggins before you signed it?

19    THE DEFENDANT:  Yes.

20    THE COURT:  Is the plea agreement the complete

21  agreement that you have with the government?

22    THE DEFENDANT:  Yes.

23    THE COURT:  No more side agreements?  It's all

24  contained within that document?

25    THE DEFENDANT:  Yes, sir.

1        THE COURT: Has anyone made any promise or assurance

2 to you in order to persuade you to enter into this agreement?

3        THE DEFENDANT: No, sir.

4        THE COURT: Has anybody threatened you in any way?

5        THE DEFENDANT: No, sir.

6        THE COURT: In order to persuade you to either plead

7 guilty or to enter into this agreement?

8        THE DEFENDANT: No, sir.

9        THE COURT: Do you understand the terms of the plea

10 agreement?

11       THE DEFENDANT: Yes, I do.

12       THE COURT: There are a lot of pages here. You

13 understand all of this?

14       THE DEFENDANT: Yes, sir, I do.

15       THE COURT: We're going to go over it maybe a little

16 more, but the plea agreement calls for a specific sentence of

17 a term of imprisonment between 20 and 25 years. Now, I think

18 you said 24 years. Is it --

19       MR. RIGGINS: No, it's 25, Your Honor.

20       MS. PRESTON: Twenty-five, Your Honor.

21       THE COURT: Twenty-five years? Maybe I misheard

22 you. So it's between 20 and 25 years is what it calls for and

23 at least 60 months and up to a lifetime term of supervised

24 release following the term of imprisonment. Now, you heard

25 that the government is going to seek lifetime supervised

1  release, right?

2          THE DEFENDANT:  Yes, I did.

3          THE COURT:  And again, the parties would be free to

4  argue anywhere between 20 and 25 years for your term of

5  imprisonment.  Do you understand that?

6          THE DEFENDANT:  Yes, sir, I do.

7          THE COURT:  Now, do you understand that if I choose

8  not to follow those specific terms of the plea agreement, I

9  will give you the opportunity to withdraw your plea of guilty?

10 Do you understand that?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  So with respect to that -- those terms

13 of supervised release and the terms of imprisonment, I don't

14 have to accept those.  And if I don't, then you can withdraw

15 your plea.  Do you understand that?

16         THE DEFENDANT:  Yes, sir, I do.

17         THE COURT:  Do you understand that if I choose not

18 to follow those specific terms of the plea agreement, I will

19 give you the opportunity also to withdraw from the agreement

20 altogether.

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  And that I would also offer that to the

23 government.  If I don't accept those, the government could

24 withdraw as well.  Do you understand that?

25         THE DEFENDANT:  Yes, sir, I do.

1    THE COURT:  Do you also understand that if I reject

2    any of those terms and you choose not to withdraw your plea, I

3    may impose a more severe sentence without being bound by the

4    plea agreement whatsoever?

5    THE DEFENDANT:  Yes, sir, I do.

6    THE COURT:  Are you pleading guilty today of your

7    own free will and because you are, in fact, guilty?

8    THE DEFENDANT:  Yes, sir.

9    THE COURT:  Maybe if we -- can you hear that okay,

10   Cathy?

11   COURT REPORTER:  I can.

12   THE COURT:  You said you've reviewed the plea

13   agreement with Mr. Riggins, and you understand the terms.  But

14   I do want to review certain of the provisions with you just to

15   make sure.

16   So if you turn to Paragraph 1, you propose to plead

17   guilty to Count 1 of the indictment, which charges you with

18   the offense of sexual exploitation of a child, in violation of

19   Title 18 of the United States Code, Section 2251(a); is that

20   correct?

21   THE DEFENDANT:  Yes, sir.

22   THE COURT:  You also propose to plead guilty to

23   Count 4 of the indictment, which charges you with the offense

24   of coercion and enticement, in violation of Title 18, United

25   States Code, Section 2422(b); is that correct?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Now, the government also has agreed

3    following imposition of sentence on Counts 1 and 4 to dismiss

4    Counts 2, 3 and 5 of the indictment.  Is that your

5    understanding?

6          THE DEFENDANT:  Yes, sir, it is.

7          THE COURT:  If you look, then, at Paragraphs 2

8    through 3, the offense charged in Count 1 is punishable by a

9    mandatory minimum sentence of at least 15 years' imprisonment

10   and a maximum term of up to 30 years' imprisonment, a fine of

11   up to $250,000, a term of supervised release of at least 60

12   months, which is five years, and up to life following any term

13   of imprisonment and a special assessment of $100.  Has that

14   all been explained to you?

15         THE DEFENDANT:  Yes, sir, it has.

16         THE COURT:  Now, with respect to Count 4, it's

17   punishable by a mandatory minimum sentence of at least 10

18   years' imprisonment and a maximum term of life imprisonment, a

19   fine of up to $250,000, a term of supervised release of at

20   least 60 months, and up to life following any term of

21   imprisonment, and a special assessment of $100.  Has that all

22   been explained to you?

23         THE DEFENDANT:  Yes, sir, it has.

24         THE COURT:  Staying there on Paragraphs 2 to 3 -- 2

25   and 3 are the elements of the offense under B of each of

those, and if you were to go to trial to sustain the offense

charged in Count 1 to which you propose to plead guilty, the

government would have to prove beyond a reasonable doubt that

you did employ, use, entice, persuade, induce, entice and

coerce a minor, that being Minor Victim 1; No. 2, to engage in

any sexually explicit conduct as defined in 18 U.S.C., Section

2256(2); and No. 3, for the purpose of producing any visual

depictions of such conduct; and No. 4, while knowing or having

reason to know that such visual depictions would be

transported or transmitted using any means or facility of

interstate or foreign commerce or in or affecting interstate

or foreign commerce or mailed; or such visual depictions were

produced or transmitted using materials that have been mailed,

shipped, or transported in or affecting interstate or foreign

commerce by any means, including a computer, or such visual

depictions were actually transported or transmitted using any

means or facility of interstate or foreign commerce or in or

affecting interstate or foreign commerce or mailed.

       Has that all been explained to you?

       THE DEFENDANT:  Yes, sir, it has.

       THE COURT:  To sustain the offense charged in Count

4, if you were to go to trial, and you also propose to plead

guilty to that count, the government would have to prove

beyond a reasonable doubt that you used a facility or means of

interstate or foreign commerce to knowingly persuade, induce,

1 entice or coerce Minor Victim 2 to engage in sexual activity;

2 two, Minor Victim 2 was less than 16 years of age; three, you

3 believed Minor Victim 2 was less than 18 years of age --

4          Counsel, in the plea agreement, that actually says

5 Minor Victim 2 was less than 16 years of age.  That should be

6 18?

7          MS. PRESTON:  Less than 16, Your Honor.

8          MR. RIGGINS:  She was less than 16, Your Honor.

9          THE COURT:  But as far as what you would have to

10 prove, you would have to prove that she was less than 16 and

11 that Mr. Duffy believed that she was less than 18, are those

12 the elements?

13          MS. PRESTON:  There is an enhancement if she is

14 under 16.

15          THE COURT:  Okay.

16          MS. PRESTON:  And so to qualify for that

17 enhancement, we would have to prove by a preponderance to Your

18 Honor.  All we have to prove in trial is that Mr. Duffy knew

19 or should have known or believed that she was a minor, meaning

20 under the age of 18.

21          THE COURT:  The statute is 18.  The enhancement and

22 the guidelines is 16?

23          MS. PRESTON:  Yes, correct.  And in this case, we

24 agree that her age is not in dispute; and that enhancement has

25 been factored in and was considered, as well, by the probation

1   office in this case.

2        THE COURT:  I'm with you.  All right.  So let me go

3   back, Mr. Duffy.  So they would have to prove beyond a

4   reasonable doubt, one, that you used a facility or means of

5   interstate or foreign commerce to knowingly persuade, induce,

6   entice, or coerce Minor Victim 2 to engage in sexual activity;

7   two, Minor Victim 2 was less than 16 years of age -- that

8   would be for the enhancement; three, you believed that Minor

9   Victim 2 was less than 18 years of age.

10        Four, if the sexual activity had occurred, you would

11  have committed the criminal offense of either A, sexual

12  exploitation of a child in violation of 18 U.S.C. 2251(a); or

13  B, sexual misconduct with a minor, in violation of Indiana

14  Code Section 35-42-4-9(a)(1).

15        MS. PRESTON:  Just for the record, Your Honor -- and

16  I apologize for interrupting.  That's why we included that in

17  the elements section because we do tie it to that Indiana

18  statute, and that does have that specific age range.  But as

19  you can see, it's an either/or that we have to prove.  So I

20  just wanted to be clear on that for the record.

21        THE COURT:  Appreciate that.  Thank you.

22        Further clarification is that Indiana Code Section

23  35-42-4-9(a)(1) prohibits sexual intercourse or deviant

24  sexual conduct by a person who is at least 21 years of age

25  with a child who is 14 or 15 years old.

1          So let's talk about the consequences, if the Court

2   is -- or does reject the binding aspect of the Rule

3   11(c)(1)(C) plea agreement.

4          Paragraph 5, if you look again at your petition,

5   states that your plea agreement is governed by Rule

6   11(c)(1)(C) of the Federal Rules of Criminal Procedure, which

7   means that you and the government have agreed that a specific

8   sentence set forth in the plea agreement here in Paragraph 9

9   is the appropriate disposition of your case.  Has that been

10  explained to you?

11         THE DEFENDANT:  Yes, sir, it has.

12         THE COURT:  Under Rule 11(c)(1)(C), the Court must

13  accept or reject the agreed sentence specified in Paragraph 9

14  of your plea agreement.  However, the Court may defer a

15  decision until the Court has reviewed the presentence

16  investigation report; and if the Court rejects the sentence

17  and thus rejects the plea agreement, either you or the

18  government may withdraw from your plea agreement.  Has that

19  been explained to you?

20         THE DEFENDANT:  Yes, it has.

21         THE COURT:  And that was explained to you even

22  before I did so earlier today, right?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Furthermore, if the Court rejects the

25  plea agreement, the Court will advise you personally in open

court that one, the Court is rejecting the plea agreement;

two, the Court is not required to follow the plea agreement,

and you may withdraw your plea; and three, if the plea is not

withdrawn, the Court may dispose of the case less favorably

towards you than the plea agreement contemplated.  Again, has

that all been explained to you?

THE DEFENDANT:  Yes, it has.

THE COURT:  So if we turn to Paragraph 9 -- and

that's the agreed-upon sentence where you and the government

have agreed that the following sentence is the appropriate

disposition of your case; specifically, a term of imprisonment

between 20 and 25 years and at least 60 months and up to a

lifetime term of supervised release following the term of

imprisonment, has that all been explained to you?

THE DEFENDANT:  Yes, sir.

THE COURT:  As we heard earlier, the government will

argue for lifetime supervised release.  Do you understand

that?

THE DEFENDANT:  Yes, sir.

THE COURT:  You and the government have also agreed

that the provisions contained in Paragraph 9 of your plea

agreement are the only provisions of your plea agreement

subject to the provisions of Rule 11(c)(1)(C), which means

that they are the only specified provisions that the Court

must accept or reject.  Do you understand that?

1          THE DEFENDANT:  Yes, sir, I do.

2          THE COURT:  Do you also understand that if I reject

3    any part of the agreed sentence, I will tell you and give both

4    you and the government the opportunity to withdraw the plea

5    agreement?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right.  Let's turn to Paragraph 67

8    and 68.  We talked about this a little earlier, but these are

9    the sentencing guideline stipulations.  In addition to your

10   agreed sentence terms, your plea agreement also includes

11   stipulations regarding the federal sentencing guidelines.  The

12   federal sentencing guidelines provide an advisory guidelines

13   range for sentencing.

14         Have you discussed with Mr. Riggins the federal

15   sentencing guidelines and how they apply to your case?

16         THE DEFENDANT:  Yes.

17         THE COURT:  In Paragraph 68 of the plea agreement,

18   the government agreed that you should receive a two-level

19   reduction for acceptance of responsibility under Sentencing

20   Guideline Section 3E1.1(a), provided you satisfied the

21   criteria for such a reduction up to and including the time of

22   sentencing.  Has that been explained to you?

23         THE DEFENDANT:  Yes, sir, it has.

24         THE COURT:  Also, in Paragraph 68 of your plea

25   agreement, the government has agreed to file a motion under

1  Sentencing Guideline Section 3E1.1(b) requesting that the

2  Court decrease your offense level by one additional level.

3  Has that been explained to you?

4            THE DEFENDANT:  Yes, sir, it has.

5            THE COURT:  Do you also understand that unlike your

6  agreement in Paragraph 9, which is binding on the Court, if

7  the Court accepts your plea agreement, your agreement with the

8  government on this sentencing guideline is only a

9  recommendation to the Court, and the Court is not bound by

10  that recommendation?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  So in other words, the Court does not

13  have to accept these reductions for acceptance of

14  responsibility.  Do you understand that?

15            THE DEFENDANT:  Yes, sir.

16            THE COURT:  Do you also understand that if I do not

17  follow these sentencing guideline stipulations, you will have

18  no right to withdraw your plea?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  Do you further understand that if the

21  Court rejects any terms of your agreed sentence and you

22  choose -- or you choose not to withdraw your plea of guilty,

23  the Court has the authority, in some circumstances, to depart

24  upward or downward from the advisory sentencing guidelines

25  range and will also examine other statutory sentencing factors

1    under 18 U.S.C., Section 3553(a) that may result in the

2    imposition of a sentence that is either greater or lesser than

3    the advisory sentencing guidelines range.

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Let's turn back to Paragraph 13 where

6    you and the government have agreed that the Court will

7    determine which standard and special conditions of supervised

8    release to apply in your case.  Do you see that?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Do you understand that?

11             THE DEFENDANT:  Yes, I do.

12             THE COURT:  Turning, then, to Paragraph 14, because

13   of the need to pay restitution, the government has agreed not

14   to ask for a fine.  Do you understand that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Again, that doesn't mean the Court has

17   to accept that.  Do you understand that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Looking, then, at restitution.  In

20   Paragraph 16 through 18 of the plea agreement, the parties

21   agree that federal law requires restitution to the minor

22   victims in Counts 1 and 4, and you have agreed to pay Minor

23   Victim 1 $9,000 in restitution.  And separately, you have

24   agreed to pay Minor Victim 2 $9,000 in restitution.  Do you

25   understand all that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  So $9,000 per victim.  Do you understand

3   that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Paragraph 15, we talked about the

6   special assessment; but as you see there, you agree to pay a

7   special assessment of $200.  That's $100 per count; do you

8   understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Looking at Paragraphs 22 through 25 with

11  respect to forfeiture -- counsel, there's nothing listed here,

12  I don't think.

13          MS. PRESTON:  There's not, Your Honor.

14          THE COURT:  There's an Attachment A, which I don't

15  think we have.

16          MS. PRESTON:  There should have been an attachment

17  filed; but what we are asking to forfeit in this case, Your

18  Honor, is any device that was collected from the defendant

19  that has contraband on it, meaning images and videos of child

20  pornography.

21          THE COURT:  So this would be a computer, this would

22  be a disk, or a stick?  Do you know what those are?

23          MS. PRESTON:  Yes, Your Honor.  I know there was a

24  cellular phone, I believe -- right, Mr. Riggins?  And I think

25  that might be it.  The forfeiture provision does not have to

1  do with a home or any sort of instrumentality that was used to

2  facilitate the events; only any devices, if they exist, that

3  had images and videos that are deemed contraband in this case.

4          I believe the reason that there is no list there is

5  because we are not seeking to forfeit a car, a home, or any

6  specific property to help assist the government in terms of

7  its payment of his costs in this case.

8          THE COURT:  But at the time of sentencing, you would

9  have that list or prior to that time?

10         MS. PRESTON:  Yes, Your Honor, I will.

11         MR. RIGGINS:  Your Honor, the only thing my client

12  is asking for is his personal family photos that are on his

13  device and the contact information that he has on there

14  regarding his family.

15         THE COURT:  I'm sure you can work that out with the

16  government.

17         MS. PRESTON:  I can do my best to work that out.  We

18  can give him the information, but we absolutely cannot give

19  him the phone back.  That is seized contraband.

20         MR. RIGGINS:  If we could get a printout.

21         MS. PRESTON:  Yes.  That's fine.

22         THE COURT:  You understand you will be forfeiting

23  some things, and it sounds as though there may be an ability

24  to get some family photos for you.

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Just to be sure, it includes, but may

2     not be limited to, the cellular phone, digital devices, and

3     storage media; is that your understanding?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Now, if you look at Paragraph 72, it

6     talks about civil commitment.  Paragraph 72 of your plea

7     agreement indicates that you have been advised and understand

8     that under 18 U.S.C., Section 4248, you face potential civil

9     commitment for an indefinite period of time as a sexually

10    dangerous person following the end of your term of

11    imprisonment.  Do you understand that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  So if you move, then, to Paragraph 73,

14    which talks about sex offender registration.  So Paragraph 73

15    of your plea agreement indicates that you shall register as a

16    sex offender with appropriate authorities in any state in

17    which you reside, are employed, or attend school as required

18    by federal and state law under 18 U.S.C., Section 3583(d) and

19    the Sex Offender Registration and Notification Act of 42 --

20    excuse me, at 42 U.S.C., Section 16913, et seq.  Do you

21    understand all of that?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  You have to register as a sex offender?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Let's look at Paragraphs 26 through 64.

So beginning at Paragraph 26 and going through 64, that's a
factual basis for this guilty plea.  Now, as we discussed, you
had a chance to look at this before you signed it.  You've
discussed it with Mr. Riggins, but I want you to look at that
right now and see -- because I'm going to ask you here shortly
after you've had a chance to look at those paragraphs, if
those facts are all true.  So take as much time as you need to
look at those.

You've had a chance to look at all those?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are those facts true?

THE DEFENDANT:  Yes, sir.

THE COURT:  Let's turn to Paragraph 8.  Now, when
you first appeared in court with respect to this indictment,
you were advised of certain rights that you have in this
criminal proceeding; but when you plead guilty, you give up
some of those rights.  So I'm going to go over those with you.
Again, some of these are set forth in Paragraph 8, but we're
going to go over some of them again.

So first of all, as I said before, you have a right
to plead not guilty to any offense charged against you and to
maintain that plea; but when you plead guilty, you give up
that right.  Do you understand you give up that right?

THE DEFENDANT:  Yes, sir.

THE COURT:  If you were to plead not guilty and

persist in that plea, you would then have the right to a
public and speedy trial, but when you plead guilty, you give
up the right to a public and speedy trial. Do you understand
that?

THE DEFENDANT: Yes, sir.

THE COURT: At trial, you would be presumed to be
innocent, and the government would have to prove your guilt
beyond a reasonable doubt. But when you plead guilty, you
give up those rights. Do you understand you give up those
rights?

THE DEFENDANT: Yes, I do.

THE COURT: You would have the right to the
assistance of counsel for your defense in this matter,
appointed by the Court, if necessary, at trial and every other
stage of the proceeding. But when you plead guilty, you give
up that right. Do you understand you give up that right?

THE DEFENDANT: Yes, sir.

THE COURT: You have the right to see and hear all
the witnesses and have them cross-examined in your defense;
but when you plead guilty, you give up those rights. Do you
understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You have the right to decline to testify
at trial; but when you plead guilty, you give up that right as
well. Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  On the other hand, you also have the

3    right to voluntarily choose to testify in your own defense;

4    but when you plead guilty, you give up that right to testify.

5    Do you understand that?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  You have no obligation to present any

8    evidence at trial; but if you wanted to, you would have the

9    right to use the Court's subpoena power to summon witnesses

10   into court and to provide evidence in your defense.  Do you

11   understand that you give up that right when you plead guilty?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  If it were your decision not to testify

14   or to put on any evidence, those decisions cannot be used

15   against you; and I would instruct the jury they could not

16   consider those decisions in reaching their verdict.  Do you

17   understand, however, when you plead guilty, you give up that

18   right?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Do you further understand that by

21   entering a plea of guilty, if that plea is accepted by the

22   Court, there will be no trial, and you will have waived or

23   given up your right to a trial, as well as all those other

24   rights that I just went over with you?

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Let's look at Paragraph 69 through 71.

2   And these have to do with your appellate rights and your

3   waiver of those rights.  In Paragraph 69 through 71 of your

4   plea agreement, if the Court accepts your plea under the plea

5   agreement and sentences you consistent with the plea

6   agreement, you agree to waive your right to appeal your

7   conviction and your sentence.  Has that been explained to you?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Are you agreeing to give up your right

10  to appeal of your own free will?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And after having conferred with

13  Mr. Riggins?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  He advised you on what that means to

16  give up that right to appeal?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  And you understand that?

19         THE DEFENDANT:  Yes, I do.

20         THE COURT:  You understand even if there is an error

21  or if you disagree with my sentencing decision, you can't

22  appeal?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Now, I mentioned earlier that a term of

25  supervised release is among the potential penalties for the

offense to which you are pleading guilty.  Do you understand
that if you violate any of the conditions of supervised
release, you can be given an additional five years of prison?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Do you also understand that in
the federal criminal justice system, parole has been
abolished, and that if you are sentenced to prison, you will
not be released on parole?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you further understand that the
maximum good time credit you can earn is 15 percent of your
sentence?

THE DEFENDANT:  Yes, sir.

THE COURT:  That's not altered by the One Step Act;
is that correct?

MR. RIGGINS:  Not yet, Your Honor.

THE COURT:  Do you understand that the offenses to
which you are pleading guilty to are felony offenses, that if
your pleas are accepted, you will be adjudged guilty of those
offenses and that such adjudication may deprive you of
valuable civil rights such as the right to vote, the right to
hold public office, the right to serve on a jury, and the
right to possess a firearm of any type?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you further understand all of those

possible consequences of your pleas and the plea agreement

that I've just gone over with you?

THE DEFENDANT:  Yes, sir, I do.

THE COURT:  Do you have any questions of me?

THE DEFENDANT:  No, sir.

THE COURT:  Any questions for Mr. Riggins?

THE DEFENDANT:  No, sir.

THE COURT:  Mr. Riggins, do you know of any reason

that Mr. Duffy would not be able to enter a knowing and

voluntary plea of guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Is there any additional advice the Court

should give to Mr. Duffy pursuant to Rule 11?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Duffy, how do you now plead to the

charge of sexual exploitation of a child in Count 1 of the

indictment, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  How do you now plead to the charge of

coercion and enticement in Count 4 of the indictment, guilty

or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  It is the finding of the Court in the

case of United States of America versus Joshua Shane Duffy

that the defendant, Mr. Duffy, is fully competent and capable

1  of entering an informed plea, that the defendant is aware of

2  the nature of the charges and the consequences of his pleas

3  and that his pleas of guilty are knowing and voluntary pleas

4  supported by an independent basis in fact, containing each of

5  the essential elements of the offenses.  His pleas are,

6  therefore, accepted; and the defendant is now adjudged guilty

7  of Count 1 and Count 4.

8           And we've got some possible sentencing dates.

9           MR. RIGGINS:  Your Honor, may I turn my phone on so

10  that I can coordinate the calendar?

11           THE COURT:  You may.  These are all in February.

12  And so there are five dates here:  11th, 12th, 15th, 19th,

13  20th; and these are varying times.  Let me throw out some

14  times if you all want to listen to this.  So the 11th would be

15  9 in the morning.  The 12th would be 1:30.  The 15th would be

16  at 9:30.  The 19th would be at 1:30, and the 20th would also

17  be at nine o'clock in the morning.

18           MS. PRESTON:  Your Honor, from the government's

19  perspective, I have conferred with the victims in this case,

20  and those dates work.  I would request any date other than the

21  11th and the 20th.  All of the other dates and times work for

22  the United States, Your Honor.  I just would like to have a

23  little more time with the victims.  The 11th may be a

24  difficult thing, and the 20th I'm out of town.  I apologize

25  for that, Your Honor.

1    THE COURT:  You just don't like these nine o'clock

2 ones?

3    MS. PRESTON:  It's hard with three kids.

4    THE COURT:  Are these all the victims' families?

5    MS. PRESTON:  Yes.  The minor victims, as you can

6 probably tell, are not here today.

7    THE COURT:  So Mr. Riggins, we're down to the 12th,

8 15th, 19th.  Twelfth and 19th are both at 1:30, the 15th is at

9 9:30.

10    MR. RIGGINS:  Your Honor, I was conferring with my

11 client.  He was indicating he would like for his dad to be

12 able to attend.  He needs at least a 30-day notice if that's

13 possible with the Court to take it into March.

14    THE COURT:  March is pretty rough.  The Court's

15 going to be out a lot of March.

16    MS. PRESTON:  I believe the victims have the first

17 couple of weeks of March they are out.  I am out for one week

18 in March, and I would really hate for them to have to wait

19 much longer.

20    THE COURT:  Let's set it for the 19th at 1:30; and

21 hopefully, that will be enough time for you.

22    MR. RIGGINS:  That's fine with my calendar.

23    MS. PRESTON:  I would like to at least state for the

24 record that even if the defendant's father is unable to make

25 it on the 19th, he's, of course, fully capable and allowed to

1  submit a letter on his son's behalf.

2          THE COURT:  Sure.

3          MR. RIGGINS:  I've got that already.

4          MS. PRESTON:  Okay.

5          THE COURT:  Okay.  So the 19th at 1:30 is set for

6  sentencing.  Anything further for the government?

7          MS. PRESTON:  No, Your Honor.  Thank you.

8          THE COURT:  Anything for the defendant?

9          MR. RIGGINS:  No, Your Honor.  Thank you.

10          THE COURT:  Mr. Duffy, you're remanded to the

11  custody of the marshal.

12          COURTROOM DEPUTY:  All rise.

13          *(The proceedings were adjourned at 10:21 a.m.)*

14

15

16

17

18

19

20

21

22

23

24

25

1        CERTIFICATE OF COURT REPORTER

2

3        I, Cathy Jones, hereby certify that the foregoing is a

4   true and correct transcript from reported proceedings in the

5   above-entitled matter.

6

7

8     /s/ Cathy Jones                    May 17, 2019

9   _____
    CATHY JONES, RDR, FCRR
    Official Court Reporter
10  Southern District of Indiana
    Indianapolis Division
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25